**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRICKLESTAR INC., <br><br>                 Plaintiff, <br><br> vs. <br><br> AM CONSERVATION GROUP, INC. <br><br><br>                 Defendant. | CIVIL ACTION NO. 1:20-cv-6667 <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TrickleStar Inc. ("Plaintiff" or "TrickleStar"), by its attorneys, files this Complaint against Defendant AM Conservation Group, Inc. ("Defendant" or "AMCG"), and states and alleges as follows:

**THE NATURE OF THE ACTION**

1.      This is an action for trade dress infringement, trademark infringement, false advertising, and patent infringement.

2.      As detailed herein, for approximately seven years, AMCG purchased TrickleStar's Tier 1 Advanced Power Strip (the "TrickleStar Tier 1 APS") product for resale or distribution in "energy efficiency kits" or as standalone products. AMCG chose TrickleStar power strips because they are high quality products with a strong reputation for safety and quality in the energy efficiency industry. In 2020, things took a menacing turn when AMCG launched its own Tier 1 APS product that mimics the appearance of TrickleStar's product in every meaningful way. Indeed, the products are so similar that AMCG used a picture of a TrickleStar product in advertising for its own product. Not only has AMCG created a doppelganger power strip, but

AMCG has replaced TrickleStar's products with these imposter products in the energy efficiency kits it sells and distributes, in direct install programs, and in other utility marketplace offerings. It is undeniable that AMCG's actions have injured TrickleStar's sales. But worse, because the AMCG product is both indistinguishable from and inferior to the TrickleStar product, AMCG's copying threatens TrickleStar's brand and business reputation.

3.    TrickleStar seeks both preliminary and permanent injunctive relief prohibiting Defendant from infringing TrickleStar's trade dress, as well as monetary damages to compensate TrickleStar for Defendant's infringement. TrickleStar likewise seeks both preliminary and permanent injunctive relief prohibiting and correcting Defendant's false advertising of its products, as well as monetary damages to compensate TrickleStar for Defendant's false advertising.

4.    TrickleStar also seeks both preliminary and permanent injunctive relief prohibiting Defendant from making, using, offering for sale, selling, and/or importing products (the "Accused Products") infringing U.S. Patent No. 6,917,506 (the "'506 Patent") (*see* Exhibit A), as well as monetary damages to compensate TrickleStar for Defendant's infringement.

## THE PARTIES

5.    TrickleStar Inc. is a Delaware corporation with its principal place of business at 4859 Kendrick ST. S.E., Grand Rapids, Michigan 49512.

6.    On information and belief, AM Conservation Group is a New Jersey corporation with its principal place of business at 1701 Charleston Regional Pkwy Ste. A, Charleston, South Carolina 29492. On information and belief, AMCG maintains facilities in at least Sparks, Nevada. On information and belief, AMCG distributes products across the United States. (*See* Exhibit B, https://www.amconservationgroup.com/about-us.) According to its website, in 2019, AMCG increased its e-commerce revenue by 565% and shipments by 1,433% from 2018.

7.     On information and belief, in or about 2016, AMCG merged with Franklin Energy Services, LLC ("Franklin Energy") "to broaden [its] service delivery."  (*See* Exhibit B, https://www.amconservationgroup.com/about-us.)    Franklin Energy maintains at least four regular, established places of business in this District:  Bolingbrook, Illinois; Downers Grove, Illinois;   Chicago-Fulton-Market;   and   Chicago-O'Hare.   (*See*   Exhibit   C, https://www.franklinenergy.com/contact-us.)    On information and belief, Franklin Energy distributes or supplies AMCG products to end users.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement pursuant to the Patent Laws of the United States, in particular 35 U.S.C. §§ 271, 281, 283, 284, and 285, as well as for trade dress infringement and false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 (federal question) and 1338(a) (any Act of Congress relating to patents or trademarks).  In addition, the Court alternatively has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court has personal jurisdiction over Defendant because it has committed or will commit acts of infringement in violation of 15 U.S.C. § 1125 and, on information and belief, has placed and will place infringing products into the stream of commerce, with the knowledge or understanding that such products will be sold in the State of Illinois, including in this District.  The acts by Defendant have caused and will cause injury to TrickleStar within this District.  Upon information and belief, Defendant has sold and intends to sell its infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate commerce.

10.     Upon information and belief, Defendant has, through its manufacture, sales, importation, and/or distribution of the Accused Products, as defined herein, transacted business in this District and/or contracted to supply items in this District, and therefore is subject to jurisdiction within this District pursuant to the Illinois Long-Arm Statute, 735 Ill. Comp. Stat. Ann. 5/2-209(a)(1).

11.     Additionally, or alternatively, Defendants have, through their manufacture, sales, importation, and/or distribution of the Accused Products, caused and will continue to cause injury to TrickleStar both within and outside of this District.  Upon information and belief, Defendants derive substantial revenue from the sale of the Accused Products within this District. *See* 735 Ill. Comp. Stat. Ann. 5/2-209(a)(2).

12.     Defendants have sufficient minimum contacts with this District, through at least the importation, distribution, offer and/or sale of infringing goods within this District, such that this Court has personal jurisdiction over Defendants.

13.     Venue is proper within this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant transacts business within this district and has or intends to offer for sale in this district products that infringe the TrickleStar trade dress and the '506 Patent.  In addition, venue is proper pursuant to 28 U.S.C. §1400(b) because Defendant has committed acts of infringement and has a regular and established place of business in this district.

## **FACTUAL BACKGROUND**

14.     Founded in 2008, TrickleStar designs and supplies affordable, simple and easy-to-use energy-saving products to help consumers reduce energy consumption in their homes and workplaces.  TrickleStar's portfolio of energy-saving products includes not only the Advanced Power Strips that are the subject matter of this lawsuit (described below), but also load controllers, energy monitors, energy meters, surge protectors, smart thermostats, and water heater controllers.

TrickleStar's products protect consumer devices and help minimize environmental impact by reducing energy wastage from appliances and consumer electronics products. Some of these energy-saving products are pictured below:



15. TrickleStar's energy-saving products, including its Advanced Power Strips, are primarily marketed to and purchased by (or on behalf of, via distributors) electric utilities, energy

efficiency programs, implementation contractors and energy auditors in the United States, for distribution to consumers and end users to improve their own energy efficiency at home or at work.

16.     Prior to TrickleStar's entry into the market, demand for Advanced Power Strips products in the U.S. was relatively intermittent.  To address and alleviate the market's concern about safety, including fire safety, TrickleStar made substantial investments in developing safety features.  As a result of TrickleStar's investments, demand for Advanced Power Strips products in the U.S. has flourished.  As just one example, TrickleStar developed and offers Premium Fireproof Surge Protection in all TrickleStar products.  This Premium Fireproof Surge Protection means that all TrickleStar products have ceramic-encased Metal Oxide Varistors ("MOVs") that suppress more energy and dissipate heat faster than traditional surge protection products.

17.     TrickleStar consistently produces high-quality products.  In particular, the TrickleStar Tier 1 APS has the reputation as the best energy-saving power strip in the market amongst utilities and energy programs:

 

Figure 1.                                                    Figure 2.

18.     The TrickleStar Tier 1 APS reduces energy waste—saving money—as well as prolonging the life of electronics.  It is ideal for computer set-ups and television set-ups.

- 6 -

19.     The TrickleStar Tier 1 APS works on a simple control/switched basis.  When the TV or PC is plugged into the control outlet and turned on, the switched outlets will turn and on and electronics plugged into them can be used.  When the TV or PC is turned off, the electronics plugged into the switched outlets turn off.  *See* illustration at Figure 3 below:



Figure 3.

20.     Since its brand's inception, TrickleStar has used the distinctive white, green, and grey color scheme for its product designs, product packaging, and marketing and advertising materials, incorporating sans serif typefaces and including the distinctive TrickleStar Starburst

logo, (the "TrickleStar Trade Dress")—as shown below in Figure 4[1]:



Figure 4.

21.     In particular, the TrickleStar Trade Dress uses Pantone 376C to create its "TrickleStar green" shown above in its Starburst logo.  For its deep grey, TrickleStar uses Pantone 432C on a white background (positive version) or Pantone 430C on a black background (negative version).  The TrickleStar brand name is adapted from the sans serif SchulVokal font, and the product name is created with the sans serif Max (Bold) font.  Additionally, the TrickleStar Tier 1 APS Product itself uses all lower-case sans-serif Helvetica typeface, silk-screened on the product, to mark receptacles and other features.

22.     TrickleStar has invested substantial amounts of time and millions of dollars in promoting the TrickleStar Tier 1 APS with the TrickleStar trade dress.  Again, TrickleStar is unique in its provision of Premium Fireproof Surge Protection for energy-saving power strips, and TrickleStar extends that commitment to quality from design, to production, and even packaging of its products, including the TrickleStar Tier 1 APS.  As a result of the efforts of TrickleStar over more than 10 years of continuous use, its trade dress has gained an excellent reputation and a high degree of recognition within the energy efficiency industry, including utilities, their program managers, implementation contractors, trade allies, evaluators, distributors and the general public.

23.     Through long-term, ongoing and substantial use of the TrickleStar trade dress, the

---

[1] The TrickleStar products are sold under the registered mark TRICKLESTAR, U.S. Reg. No. 3,751,114, which is owned by TrickleStar Inc.'s parent company, TrickleStar Limited.  Infringement of the actual TRICKLESTAR registered word mark is not asserted in this action.

TrickleStar trade dress has become well-known and well-recognized in the energy efficiency industry as associated with and signifying TrickleStar and its reputation for excellence—particularly its Premium Fireproof Surge Protection. The color scheme and TrickleStar Starburst logo elements together are unique to the design of TrickleStar surge protection products, particularly in the Tier 1 APS category. The overall effect of these factors (the streamlined, sans-serif lettering styles, incorporating both dark grey and green lettering and design features, on a clear white background in both packaging and product design, accented by the TrickleStar Starburst logo) creates a unique design that is associated with and signifies TrickleStar and its associated reputation for excellence in the energy efficiency industry.

<u>*AMCG's Infringing "Simply Conserve" Tier 1 APS and False Advertising*</u>

24.     On information and belief, in or about 2013, AMCG also launched its "Simply Conserve" brand.   *See* Exhibit B, https://www.amconservationgroup.com/about-us.   On information and belief, the Simply Conserve brand did not, at any point from 2013-2019, include an APS offering.   On information and belief, also in 2013, AMCG acquired Niagara Conservation's line of energy efficiency and water conservation products which, on information and belief, included a Tier 1 APS offering. (*See* ¶ 53 *infra*.)

25.     Instead, AMCG has, since in or about 2013, purchased, marketed, or distributed TrickleStar's industry-leading Tier 1 APS. AMCG has been a customer of TrickleStar since 2013, and has distributed or re-sold the TrickleStar Tier 1 APS in "energy efficiency kits" or as standalone products to (or to distributors on behalf of) corporations, municipalities, and utilities. These energy efficiency kits are targeted to residential, multifamily, small business, and/or corporate sustainability customers to assist them in energy-conservation.

26.     For years, TrickleStar provided the highest market share of Tier 1 APS devices in the U.S. That abruptly changed when AMCG decided to cut TrickleStar out of the picture.

27.     Recently, TrickleStar became aware that AMCG has released its own "Simply Conserve"-brand Tier 1 APS product (the "Simply Conserve APS").  Disturbingly, AMCG has designed its Simply Conserve APS to copy the TrickleStar trade dress and the overall design of the TrickleStar Tier 1 APS product.

28.     Historically, the AMCG brand has featured an orange and light blue color scheme on gray and white backgrounds—nothing at all like the TrickleStar trade dress.  A current AMCG corporate logo, for instance, is pictured below:



(*See* Exhibit B, https://www.amconservationgroup.com/about-us.)

29.     An historical version of the AMCG corporate logo, from on or about 1989, is shown below:



(*See* Exhibit B, https://www.amconservationgroup.com/about-us.)

30.     Another example of the AMCG branding can be seen in a video on its website describing its conservation kits.  A still screen is pictured below:



*See* Exhibit D, https://www.amconservationgroup.com/conservation-kits.

31.     As noted above, AMCG has also historically offered products—but not APS products—under its Simply Conserve brand. The Simply Conserve brand image is shown below:



That brand includes what appears to be the same shade of turquoise for lettering with a green leaf in the letter "O."  For its prior Simply Conserve product offerings, on information and belief, they incorporated different combinations of the AMCG orange, the AMCG turquoise, and the Simply Conserve green shade.  On information and belief, other Simply Conserve products are packaged in cardboard boxes or encased in see-through plastic on the surface of a cardboard backing.

32.     But in launching the Simply Conserve APS, AMCG tossed its brand aside.  And, other than the brand image, AMCG also did not use existing Simply Conserve branding.  Instead

of relying on its own existing brand identity and trade dress, AMCG instead has made a radical

departure from its own brand, choosing instead to copy the TrickleStar trade dress with its Simply

Conserve Tier 1 APS product. Instead of using the existing AMCG branding—or even creating

new branding—the Simply Conserve Tier 1 APS product instead is explicitly designed to confuse

purchasers and users as to the source of the product. Images of the Simply Conserve Tier 1 APS

product are shown below:



(*See* Exhibit E, https://products.amconservationgroup.com/7-outlet-advanced-power-

strip/#description.)

33.    In fact, the TrickleStar and Simply Conserve APS products look so confusingly

similar that AMCG itself used a photo of a *TrickleStar product*, the TS1602, in its own product

listing for its Simply Conserve Tier 1 APS:

(*See* Exhibit F.)[2]

34.     But AMCG did not stop at simply mimicking the trade dress of the TrickleStar Tier 1 APS device in the design of the device.  AMCG actually has created its packaging to overtly copy the TrickleStar trade dress and the packaging of the TrickleStar Tier 1 APS product.  First, both the TrickleStar APS and the Simply Conserve APS are packaged into plastic foil bags, as shown below:

 

As shown above, nearly every element of the Simply Conserve Tier 1 APS product packaging

---

[2] The product was removed at TrickleStar's request before the filing of this action but remains available through search.

directly copies that element from the TrickleStar packaging. The color scheme, typeface, and arrangement of each and every marking is designed to replicate the TrickleStar trade dress and deceive the purchaser and user as to the true source of the Simply Conserve product. Additionally, AMCG's choice to use a plastic foil bag deviates from its packaging choices for its other products.

35. Other similarities suggest that AMCG deliberately copied TrickleStar's Tier 1 APS device. Although AMCG had many choices for the logo for its connected device warranty, it copied TrickleStar's warranty logo:

     

Simply Conserve Warranty Logo.          TrickleStar Warranty Logo.

Further, AMCG's data sheet containing technical specifications appears to have been copied from the TrickleStar data sheet with few alterations. *See* below and at Exhibit G. Upon information and belief, AMCG deliberately set out to copy the design and look of the TrickleStar product to trade off of the goodwill and reputation TrickleStar has developed.



36.     Significantly, purchasers and end users of Tier 1 APS devices provided in the AMCG Conservation Kits formerly were receiving TrickleStar Tier 1 APS devices.   The replacement of the TrickleStar device with the AMCG house brand Simply Conserve device is likely to be undetectable to the purchaser and end user.

37.     Additionally, the AMCG Simply Conserve APS is offered through or purchased by many of the utility companies in the United States that also offer or purchase the TrickleStar Tier 1 APS product, including, without limitation:  Consumers Energy; Georgia Power; National Grid NY; Central Hudson; Orange & Rockland; DP&L; RG&E; SMUD; IPL; SRP; South Jersey Gas; Ameren Missouri; Energy Wise MN; GreyStone Power Corporation; Baltimore Gas and Electric Company; Xcel Energy; Efficiency Works; EnergyEarth; Power Wise; Holy Cross Energy; and Commonwealth Edison Company.

38.     These overlapping sales venues increase the likelihood that the purchaser and user will be deceived as to the true source of the AMCG Simply Conserve APS.

39.     Furthermore, on information and belief, AMCG pitches its Simply Conserve APS in comparison with and as a direct replacement to, the TrickleStar Tier 1 APS product, thereby illustrating AMCG's desire for customers to see its product as akin to TrickleStar's product.  Upon information and belief, AMCG has marketed its Simply Conserve APS as the "same" product at a lower price.

40.     For one utility, Commonwealth Edison Company ("ComEd"), AMCG has replaced the TrickleStar Tier 1 APS devices for the AMCG Simply Conserve APS in the kits that ComEd uses in programs for its low-income customers.

41.     For at least one other utility company, Consumers Energy, the AMCG Simply Conserve APS product is creating price erosion for the TrickleStar Tier 1 APS product due to

- 15 -

Consumer Energy's website depicting AMCG's cheaper product alongside TrickleStar's product:



42.     Moreover, on information and belief, AMCG is advertising its infringing Simply Conserve Tier 1 APS device as providing "high quality, fireproof surge protection." (*See* Exhibit H, ComEd instructional video re Simply Conserve Tier 1 APS.) In a video released May 5, 2020, ComEd—a Conservation Kit customer of AMCG who previously received TrickleStar Tier 1 APS devices in those kits provided to ComEd customer—instructs its customers that the Simply Conserve Tier 1 APS device provides "high quality, fireproof surge protection." This statement is false, as the Simply Conserve Tier 1 APS product ***does not contain fireproof surge protection***.[3]

43.     Herein lies the most concerning element of AMCG's willful and wanton infringement of the TrickleStar trade dress—purchasers and users of the inferior AMCG product (like ComEd) have believed, and are likely to continue to believe, in error that the Simply Conserve Tier 1 APS provides the same, reliable fireproof surge protection as the TrickleStar products when the Simply Conserve products do not.

_____

[3] The video was taken down prior to the filing of this lawsuit at the request of TrickleStar.

44.     The TrickleStar Tier 1 APS product, like all TrickleStar products, uses a ceramic-encased MOV to suppress more energy and dissipate heat faster than traditional MOVs. TrickleStar also uses extra thermal fuses, higher-rated circuit breakers, and higher specification materials.  These safety-focused improvements increase production cost by approximately $2 per unit compared to other APS products.

45.     This distribution and promotion of this infringing, confusing, inferior, and higher-risk product is in direct diminishment to the public good.

46.     AMCG's distribution and promotion of an inferior and higher-risk product also threatens injury to the energy efficiency market in general.  As discussed above, TrickleStar expanded the market for Advanced Power Strips products and kits with its substantial investments into product safety features.  Utilities, energy efficiency program sponsors, and other market participants rely on the advanced safety and fireproof surge protection of TrickleStar's Tier One APS product.  If AMCG's products result in safety incidents, that threatens to impact the scope and existence of the Advanced Power Strips market.

47.     Moreover, the increased fire risk posed by the inferior and infringing Simply Conserve Tier 1 APS product creates additional potential liability for TrickleStar itself.  Should the inferior and infringing Simply Conserve Tier 1 APS be involved in a fire incident, TrickleStar may face significant legal costs to prove that the accused product was not the TrickleStar product. In other words, the Simply Conserve product looks so similar to the TrickleStar product that a damaged Simply Conserve product may be misidentified as potentially belonging to TrickleStar, such that TrickleStar is accused and sued as well.

48.     The similarity between the Simply Conserve Tier 1 APS product, packaging, and marketing will create confusion among consumers as to the origin of the product.  This creates a

perceived connection between the two companies, thus providing AMCG with a shortcut to consumer acceptance of its Simply Conserve Tier 1 APS product.

49.     Indeed, the likelihood of confusion as to origin increases when a purchaser or user views the parties' respective marks from those settings in which a purchaser or user would typically view the parties' respective products.  Furthermore, the likelihood of confusion as to origin increases when products are promoted through convergent marketing channels and when the parties target the same customers, as is the case between the Simply Conserve Tier 1 APS and the TrickleStar Tier 1 APS.

50.     Just as significant, however, is the likelihood of confusion as to the sponsorship or approval by TrickleStar of the infringing Simply Conserve Tier 1 APS device.  As detailed herein *supra*, AMCG has distributed the TrickleStar Tier 1 APS for many years.  Utilities and other purchasers of the Conservation Kits—or the devices individually—are well aware that AMCG has purchased devices from TrickleStar for distribution and resell for many years.  Undoubtedly, many of these purchasers and users will believe that TrickleStar has created the Simply Conserve brand for AMCG and that the Simply Conserve brand will provide the same high-quality features— including Fireproof Surge Protection—provided by TrickleStar products.  This, of course, would not be true.

51.     Additionally, because the Simply Conserve brand is inferior to the high-quality and Fireproof Surge Protection offered by TrickleStar, TrickleStar is likely to endure loss of reputation to its well-established brand.

52.     In radically departing from AMCG's historical branding and product and packaging designs that feature blue/orange color schemes with the light bulb logo, AMCG has caused and will continue to cause confusion in the marketplace with its Simply Conserve Tier 1 APS product.

In this regard, AMCG's Simply Conserve Tier 1 APS product will clearly and plainly violate the rights that TrickleStar has developed in its valuable TrickleStar trade dress.

### AMCG's Infringement of the '506 Patent with the Simply Conserve Tier 1 APS and the Niagara Conservation Tier 1 APS

53.     AMCG also offers a second Tier 1 APS product under the "Niagara Conservation" brand (the "Niagara APS"), in addition to the Simply Conserve Tier 1 APS product (together, the "Accused Products").

54.     AMCG makes, uses, offers to sell, and sells the Accused Products in the United States.

55.     The Niagara APS product is sold through several entities, including, without limitation, the following online retailers: Amazon; Myriad Greeyn; Green Home Experts; NewEgg; Walmart; Energy Earth; Power-Strip; Power Wise Cleco; Fadu.vn; Ubuy; and Bananza.

56.     The Simply Conserve Tier 1 APS product is resold by numerous utilities, including, without limitation, the utilities outlined in Paragraph 37 herein.

57.     The '506 Patent is titled "Control Apparatus for Master/Slave Outlets" and discloses a control apparatus for a master outlet and at least one slave outlet being used in a power strip.  A true and correct copy of the '506 Patent is attached hereto as Exhibit A.

58.     The Accused Products infringe the '506 Patent by incorporating one or more elements covered by claim 1 of the '506 Patent, as demonstrated in the claim chart attached hereto as Exhibit I, including, without limitation:

     a.   having a master outlet and at least one slave outlet;

     b.   having a connection between the electrical sensor connected to the alternative power supply and the master outlet, generating an induced power signal from the alternative power supply;

     c.   having a driver electrically connected to the current sensor and amplifying the

induced power signal;

d. having a large current switch component electrically connected to the alternative power supply;

e. having the large current switch electrically connected to the driver; and

f. having the large current switch connected to at least one slave outlet.

## COUNT I
## TRADE DRESS INFRINGEMENT

59. TrickleStar incorporates the above paragraphs herein by reference.

60. AMCG intentionally has adopted and is using in commerce in connection with the advertising, promotion and sale of the Simply Conserve Tier 1 APS, an overall appearance that is intended by AMCG to be substantially similar to, and a colorable imitation of, the distinctive TrickleStar Tier 1 APS Trade Dress.

61. AMCG's unlawful adoption and use, in commerce, of such colorable imitations of the TrickleStar Tier 1 APS Trade Dress without the authorization of TrickleStar is likely to cause confusion, to cause mistake and/or to deceive consumers as to the affiliation, connection or association of AMCG with TrickleStar, or as to the origin, sponsorship or approval of AMCG's goods with those of TrickleStar.

62. Through the promotion, advertising and sale of such confusingly similar items, AMCG has unlawfully simulated, appropriated and infringed TrickleStar's rights and its proprietary trade dress. Such conduct and appropriation constitute a false description or representation of TrickleStar's products or a false designation of origin, in violation of 15 U.S.C. § 1125(a).

63. AMCG's conduct and its false representations of genuineness have injured and will injure TrickleStar by diversion of TrickleStar's goodwill and sales to AMCG and by diminishing and destroying TrickleStar's goodwill and reputation. TrickleStar seeks damages in

such sum as may be proved at the time of trial in an amount equal to that received by AMCG and those sums lost by TrickleStar as a result of such conduct and actions, such amount to be not less than $75,000.

## COUNT II
## FALSE ADVERTISING

64.     TrickleStar incorporates the above paragraphs herein by reference.

65.     AMCG has made false and misleading descriptions and representations of fact that constitute false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Sections 1125(a)(1)(A) and (B) of the Lanham Act provide, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities…

67.     AMCG has made false, deceptive and unsubstantiated statements of fact about its own products' nature, characteristics, and qualities through an instructional video published by its customer as described herein, with the intent to mislead and deceive purchasers of the Simply Conserve Tier 1 APS device.

68.     Upon information and belief, AMCG's false and misleading statements of fact have actually deceived or tended to deceive a substantial segment of the relevant and intended consumer population into purchasing and using the Simply Conserve Tier 1 APS device instead of TrickleStar's competing TrickleStar Tier 1 APS product, by misleading consumers into wrongly believing that the Simply Conserve Tier 1 APS functions as claimed.

69. Upon information and belief, AMCG's false and misleading statements of fact have influenced the buying decisions of consumers throughout the United States because AMCG's claims relate to fundamental features of the TrickleStar Tier 1 APS product.

70. Upon information and belief, AMCG's false and misleading statements of fact were and are made in interstate commerce.

71. Upon information and belief, AMCG's conduct is willful, deliberate, intentional, and in bad faith.

72. AMCG's unlawful actions have caused, and will continue to cause, irreparable harm to Plaintiffs unless enjoined.

73. AMCG has profited from its unlawful actions and has been unjustly enriched to the detriment of TrickleStar. AMCG's unlawful actions have caused TrickleStar monetary damage in an amount presently unknown, but in an amount to be determined at trial.

**COUNT III**
**PATENT INFRINGEMENT OF U.S. PATENT NO. 6,917,506**

74. TrickleStar incorporates the above paragraphs herein by reference.

75. On July 12, 2005, United States Patent No. 6,917,506 was duly and legally issued. The '506 Patent is titled "Control Apparatus for Master/Slave Outlets" and discloses a control apparatus for a master outlet and at least one slave outlet being used in a power strip. A true and correct copy of the '506 Patent is attached hereto as Exhibit A.

76. TrickleStar is the owner of the '506 Patent by virtue of assignments, dated November 4, 2020, that have been duly and properly recorded with the U.S. Patent and Trademark Office on or about November 9, 2020.

77. TrickleStar possesses the exclusive right to practice the '506 Patent within the United States.

- 22 -

78.     AMCG has manufactured, made, marketed, sold, imported, and/or used power strips comprising all of the elements and limitations of one or more of the claims of the '506 Patent, and, therefore, AMCG has infringed one or more claims of the '506 Patent.

79.     AMCG has infringed the '506 Patent, literally and/or under the doctrine of equivalents, including at least Claim 1, by making, using, selling, offering for sale, and/or importing the Accused Products without permission or license from TrickleStar.

80.     AMCG's infringement of the '506 Patent has been willful and deliberate since at least August 12, 2020, when TrickleStar provided AMCG notice of its infringement of the '506 Patent.

81.     TrickleStar is entitled to recover damages as a result of Simply Conserve's infringing conduct, including lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284.  Plaintiffs are also entitled to treble damages and recovery of attorneys' fees as a result of AMCG's willful infringement of the '506 Patent.

## JURY DEMAND

TrickleStar hereby requests a jury trial of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, TrickleStar prays for judgment that:

a.      One or more claims of United States Patent No. 6,917,506 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant and/or by others to whose infringement Defendant have contributed and/or by others whose infringement has been induced by Defendant;

b.      Defendant, Defendant's respective officers, agents, servants, employees, contractors, and attorneys, and all those in active concert and participation with the foregoing persons and entities be enjoined permanently from further infringement of the Asserted Patent.

c.     TrickleStar be awarded damages, together with prejudgment interest and costs, to compensate TrickleStar for Defendant's infringement of the Asserted Patent, and, that such award be increased by three times the amount assessed in view of Defendants' willful infringement;

d.     TrickleStar be awarded its costs, disbursements, and attorneys' fees pursuant to 35 U.S.C. § 285;

e.     Defendant infringed TrickleStar's rights in the TrickleStar Trade Dress and competed unfairly with TrickleStar by use of a trade dress confusingly similar to the TrickleStar Trade Dress in the use, promotion, and sale of the Simply Conserve Tier 1 APS product;

f.     preliminarily and permanently enjoins Defendant, including its partners, officers, agents, servants, employees, parent, subsidiaries, sister companies, and all those persons and entities in active concert or participation with them, from further infringement, including but not limited to advertising, marketing, offering for sale or selling the Simply Conserve Tier 1 APS product, and related products utilizing the TrickleStar Trade Dress or any trade dress confusingly similar thereto;

g.     provides for a recall of at least the Simply Conserve Tier 1 APS product distributed previously as part of both preliminary and permanent injunctive relief;

h.     provides for corrective advertising sufficient to correct false advertising to prevent the trade and public from further false and misleading understandings about AMCG's products as part of both preliminary and permanent injunctive relief;

i.     TrickleStar recovers pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

j.     TrickleStar be awarded such other and further relief, at law or in equity, as the Court may deem just and proper.

Dated:  November 9, 2020                  Respectfully submitted,

                                          /s/Deanna R. Kunze
                                          Deanna R. Kunze (Ill. Bar No. 6287513)
                                          dkunze@nixonpeabody.com
                                          Lisa C. Sullivan (Ill. Bar No. 6243976)
                                          lsullivan@nixonpeabody.com
                                          Benjamin P. Rosborough (Ill. Bar No. 6321407)
                                          brosborough@nixonpeabody.com
                                          Vivian Sandoval (Ill. Bar No. 6333297)
                                          vsandoval@nixonpeabody.com
                                          70 West Madison Street, Suite 3500
                                          Chicago, IL 60602
                                          Tel: 312-977-4400
                                          Fax: 312-977-4405
                                          *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, TrickleStar hereby

demands a trial by jury on all issues raised by the Complaint.


DATED:      November 9, 2020          NIXON PEABODY LLP

                                      By:      /s/  *Deanna R. Kunze*
                                               Attorneys for Plaintiff
                                               TrickleStar LLC